ATTORNEYS FOR APPELLANT
Susan K. Carpenter
Public Defender of Indiana

L. Michael Sauer
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Steve Carter
Attorney General of Indiana

Cynthia L. Ploughe
Deputy Attorney General
Indianapolis, Indiana

In the

# Indiana Supreme Court

No. 62S05-0501-CR-15

HENRY LUKE KELLEMS, JR.,

*Appellant (Defendant below)*,

v.

STATE OF INDIANA,

*Appellee (Plaintiff below)*.

Appeal from the Perry Circuit Court, Nos. 62C01-0203-FD-236, 62C01-9911-DF-585
The Honorable James A. McEntarfer, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 62A05-0401-CR-38

**February 16, 2006**

**Sullivan, Justice.**

The State of Indiana challenges the Court of Appeals' determination that an identified informant's tip did not establish sufficient reasonable suspicion to validate a traffic stop of Henry Luke Kellems under the Fourth Amendment to the United States Constitution. Because a tip from an identified informant or concerned citizen coupled with some corroborative police investigation is sufficient to create reasonable suspicion for an investigative stop, we affirm the trial

court's denial of Kellems's motion to suppress the evidence and his conviction as a habitual traffic offender.

## Background

On March 20, 2002, the Tell City Police Department received a telephone call from a woman identifying herself as Dodie McDonald. McDonald reported seeing a man she identified as Luke Kellems driving from Troy to Tell City. According to her report, Kellems was driving without a license or insurance, intoxicated, and with children in the vehicle. Additionally, McDonald provided the police with a description of Kellems's vehicle, a white pickup truck, and his license plate number.

Tell City Police Sergeant Lynn Wooldridge responded to the dispatch of McDonald's tip. After spotting Kellems in a white pickup truck, he followed it to confirm whether the license plate number matched that given to dispatch by McDonald. Having matched the plates, Sergeant Wooldridge pulled Kellems's vehicle over without observing any traffic violation.

Upon pulling Kellems over, Sergeant McDonald approached the truck with Kellems sitting in the driver's seat and his wife and child in the passenger seats. Sergeant Wooldridge requested Kellems's driver's license and received an identification card instead. The identification card was checked through the Bureau of Motor Vehicles and indicated that Kellems had a suspended driver's license and was a habitual traffic offender. A portable breathalyzer test was administered to Kellems, which came up negative. Kellems was then arrested and charged with operating a vehicle while a habitual traffic offender.[1]

Before his trial Kellems filed a motion to suppress the evidence gathered during his traffic stop. This motion was denied at a pre-trial hearing and again at his October, 2003, bench trial. The trial court found Kellems guilty of being a habitual traffic offender and in violation of

---

[1] Ind. Code § 9-30-10-16 (2004).

his probation.[2]  Kellems was sentenced to three years in the Indiana Department of Correction on the underlying offense and had his driving privileges revoked for life.  In addition, the trial court revoked Kellems's probation and ordered him to serve two years in prison for his previous offenses.

The Court of Appeals reversed the trial court's decision to deny Kellems's motion to suppress.  Kellems v. State, 816 N.E.2d 421 (Ind. Ct. App. 2004).  As such, it held there was insufficient evidence to support his habitual traffic offender conviction and reversed the trial court's conviction for that underlying offense and its revocation of Kellems's probation.  We granted transfer and now affirm the judgment of the trial court for the reasons that follow.

**Discussion**

At issue in this appeal is whether the tip provided to the Tell City Police Department by Dodie McDonald was sufficient to provide police with reasonable suspicion to perform an investigatory stop of Kellems's vehicle.  As such, this case provides a neat companion to another case we decide today, Sellmer v. State, -- N.E.2d --, No. 29S04-0602-CR-58 (Ind. 2006), where the question of whether a telephone tip to the police provided the reasonably articulable suspicion of criminal activity necessary to justify an investigatory stop was also at issue.

In Sellmer, we followed the directive of the Supreme Court that reasonable suspicion determinations are to be made "by looking at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing."  U.S. v. Arvizu, 534 U.S. 266, 273 (2002).  We do the same here.

The telephone tip in Sellmer came from an anonymous caller and that fact was largely determinative of our conclusion that the tip did not provide the reasonable suspicion necessary to justify an investigatory stop.  Here, as already noted, the tipster identified herself.  Nevertheless, Kellems contends that there was not sufficient reasonable suspicion to perform an investigatory stop.  The United States Supreme Court, however, has indicated that while a tip from an identi-

---

[2] At the time of his October, 2003, trial Kellems was on probation for Operating a Vehicle as an Habitual Traffic Offender, a Class D felony, and Resisting Law Enforcement, also a Class D felony.  Kellems had pled guilty to these offenses on September 5, 2000, and received a sentence of four years in prison, with three and one-half years suspended.  In accordance with his probation, Kellems was to not be arrested or charged with any crime.

fied or known informant may not be sufficient to support a probable cause finding, such tips are sufficiently reliable to justify an investigatory Terry stop. See Alabama v. White, 496 U.S. 325, 330 (1990) (reiterating its approach established in Adams v. Williams, which held that an unverified tip from a known informant was sufficiently reliable to justify a Terry stop, although it might not have been reliable enough to establish probable cause); Adams v. Williams, 407 U.S. 143, 146-47 (1972) (holding that a tip from a known informant can be the basis of reasonable cause for police officer's investigatory stop).

The Supreme Court has taken this approach for two principal reasons. The first is the nature and purpose of Terry stops. In Adams, the Court noted that Terry stops are limited in scope and purpose. Their purpose "is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence. . . ." Adams, 407 U.S. at 146. This limited purpose has led the Court to conclude that "a brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." Id. Thus, since reasonable suspicion is all that is necessary to support a Terry stop and it "is a less demanding standard than probable cause . . . [t]he Fourth Amendment requires [only] 'some minimal level of objective justification' for making the stop." White, 496 U.S. at 330 (quoting INS v. Delgado, 466 U.S. 210, 217 (1984)).

Additionally, the Supreme Court has concluded that tips from identified informants are sufficient to constitute reasonable suspicion to support an investigatory stop because a known or identified informant's "reputation can be assessed and . . . [they may] be held responsible if [their] allegations turn out to be fabricated. . . ." Florida v. J.L., 529 U.S. 266, 270 (2000). See also Illinois v. Gates, 462 U.S. 213, 233-34 (holding that where a "citizen comes forward with a report of criminal activity—which if fabricated would subject him to criminal liability—we have found that rigorous scrutiny of the basis of his knowledge unnecessary"); Adams, 407 U.S. at 146-47 (noting that a tip provided by an identified informant who subjected themselves to criminal prosecution for making a false report carried enough indicia of reliability to justify an investigatory stop).

4

While we agree with the logic that the prospect of prosecution for making a false report heightens the likelihood of the report's reliability, we think the State pushes the envelope too far to say that the prospect of prosecution for making a false report, standing alone, will in all cases constitute reasonable suspicion. The crime of false reporting in our state requires that the person giving the false report "<u>know</u> that the report or information [is] false." Ind. Code § 35-44-2-2(d)(1) (2004) (emphasis added). The very nature of tips is such that often neither the police nor tipsters themselves have that degree of certainty in their accuracy.

But the test, to repeat, is one of the totality of the circumstances and certainly susceptibility to prosecution for false reporting is a circumstance bearing on the reasonableness of suspicion.

We have also noted on past occasions "that there are two major types of informants, professional informants and cooperative [or concerned] citizens, and that the test for determining the reliability of each is different." <u>Clifford v. State</u>, 474 N.E.2d 963, 969 (Ind. 1985). <u>See also</u> <u>Pawlowski v. State</u>, 380 N.E.2d 1230, 1232 (Ind. 1978) (same); <u>Richard v. State</u>, 820 N.E.2d 749, 753 (Ind. Ct. App. 2005) (same). With respect to cooperative or concerned citizens we have observed and concluded that:

> This group includes the victims of crime or persons who personally witness a crime. These individuals generally come forward with information out of the spirit of good citizenship and the desire to assist law enforcement officials in solving crime. They are usually one-time informants and no basis exists from prior dealings to determine their reliability. Further, information of this type usually goes to past completed crimes rather than future or continuing crimes. Some jurisdictions have therefore held that informants of this type are to be considered reliable for the purpose of determining probable cause unless incriminating circumstances exist which cast suspicion upon the informant's reliability.

<u>Pawlowski</u>, 380 N.E.2d at 1232-33. We noted in <u>Pawlowski</u>, however, "that the requirement for corroboration is not totally eliminated. The amount of evidence necessary to satisfy the probable cause test is largely determined on a case-by-case basis." <u>Id.</u> at 1233.

5

Upon reflection, this goes a bit too far. We continue to believe that there may well be greater indicia of reliability in the report of the "concerned citizen" as distinguished from the "professional informant"—though again the totality of the circumstances controls—but this goes only to reasonable suspicion, not, as the prior cases suggest, probable cause.

Another circumstance, particularly relevant in this case, is the immediacy of the threat to public safety. In Sellmer, it is slight. In this case, it is much higher: a report of an intoxicated driver operating a vehicle occupied by a family on a highway.

We find that the tip provided by Dodie McDonald was sufficient to provide the Tell City Police with reasonable suspicion to conduct an investigatory stop of Kellems's car. McDonald identified herself to police when she made her call. She gave her date of birth to the police dispatcher. Tell City Police Sergeant Wooldridge knew McDonald, where she lived, and with whom she lived. Under these circumstances, had McDonald given the police a knowingly false report, she was sufficiently identified to be held criminally responsible for false reporting.

Additionally, McDonald offered the police sufficient information to allow them to corroborate her assertions independently. She provided the police with a vehicle description, license plate number, the name of the driver, and the direction in which the driver was heading, along with her claims that Kellems drove while intoxicated and without a license or insurance. She also related the fact that there were children in the vehicle. Sergeant Wooldridge, before pulling Kellems over to conduct an investigatory stop, first identified and then confirmed that the license plate of the white pickup truck he spotted matched the plate given by McDonald.

Thus, under the totality of the circumstances, we conclude that there was reasonable suspicion to support an investigatory stop where the informant identified herself, provided the police with the level of specific information noted above, which was then subsequently verified by police.[3]

---

[3] We reach this conclusion recognizing that Sergeant Wooldridge did not observe Kellems driving in an erratic manner, nor did Kellems subsequently test positive for alcohol. However, on balance and when viewed under the totality of the circumstances, we give great weight to the fact that the informant in this case identified herself and that police were able to verify all of McDonald's remaining claims.

We also find her tip sufficiently satisfied the requirements for classifying her a concerned or cooperative citizen. The record in this case does not suggest that McDonald had any intention other than her desire to assist police in their law enforcement duties. There is also no suggestion in the record that there were incriminating circumstances that would call McDonald's motives in reporting into question.

Finally, we remain cognizant of law enforcement's need to respond immediately to criminal reports of this nature in the interest of public safety.

We conclude, therefore, that McDonald acted as a concerned or cooperative citizen in making her report of criminal activity to the police and that her tip was sufficient to support an investigative stop under either the theories of identified informant or concerned or cooperative citizen.

### Conclusion

Having previously granted transfer, we affirm the trial court's denial of Kellems's motion to suppress and his conviction as a habitual traffic offender.

Shepard, C.J., and Dickson, and Boehm, JJ., concur. Rucker, J., dissents with separate opinion.

**Rucker, J., dissenting.**

A tip given to police by a purported "concerned or cooperative citizen" standing alone is not sufficient in my view to justify an investigatory stop. According to the majority, a tip from this category of persons carries sufficient indicia of reliability because "[t]hese individuals generally come forward with information out of the spirit of good citizenship and the desire to assist law enforcement officials in solving crime." Slip op. at 5 (quoting Pawloski v. State, 269 Ind. 350, 380 N.E.2d 1230, 1232 (1978)). Whatever validity this assertion may have as a general proposition, there is simply nothing in this record to support the notion that the caller here was so motivated. Indeed the caller provided information to the police that was patently false: that Kellems was operating a vehicle while intoxicated. It takes little imagination to conclude that officers of the Tell City Police Department likely would not have expended resources pursuing Kellems solely on a claim that he was driving without a license and automobile insurance. The caller may very well have concluded likewise and decided to embellish the accusations in order to get the attention of law enforcement. In short, to suppose the caller was motivated out of civic goodwill is simply a bit of a stretch.

The person calling dispatch identified herself as "Dodie McDonald" and provided her date of birth. Based on this information the caller theoretically could have been held legally responsible if she made a false police report. But Officer Wooldridge testified at the suppression hearing that he did not know the caller personally, although he knew "of her on different calls" and knew she lived with a man named Richard. Tr. at 94. There was no evidence that the caller was honest or had provided reliable information in the past; there was no evidence revealing the basis of the caller's knowledge; and there was no evidence that the officer or dispatch ever verified the caller's identity prior to the stop. As the Court of Appeals points out, "when the officers stopped Kellems' vehicle, they did not know whether the caller was actually McDonald, a prankster, or an imposter." Kellems v. State, 816 N.E.2d 421, 426 (Ind. Ct. App. 2004). "The fact that a named caller with an untested reputation called the police does not in itself establish reasonable suspicion." State v. Glass, 769 N.E.2d 639, 643 (Ind. Ct. App. 2002), trans. denied.

In this case the totality of the circumstances points in a direction opposite that reached by the majority. The Court of Appeals got it right, "the tip did not contain the requisite indicia of reliability." Kellems, 816 N.E.2d at 427. I therefore respectfully dissent and would reverse the trial court's denial of Kellems' motion to suppress.